UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

CHRISTOPHER BERRY,

    Plaintiff,

v.                Case No. 17-C-551

JEAN LUTSEY, *et al.*,

    Defendants.

## DECISION AND ORDER GRANTING SUMMARY JUDGMENT

Plaintiff Christopher Berry, an inmate currently serving a state prison sentence at Green Bay Correctional Institution (GBCI) and representing himself, filed this action under 42 U.S.C. § 1983, alleging that ten defendants were deliberately indifferent to his serious medical needs by discontinuing several medical restrictions that he had received at a previous institution. The case is before the court on a motion for summary judgment by Defendants Lisa Allen, Mary Alsteen Cassandra Baier, Scott Eckstein, James LaBelle, Kathy Lemens, Jean Lutsey, Mary Sauvey, and Hannah Utter (collective the "State Defendants") (ECF No. 95), as well as a motion for summary judgment by Defendant Susan Peters, a non-state employee who was working at GBCI under a contract. (ECF No. 88). Also before the court is Berry's motion for leave to amend his proposed findings of fact. ECF No. 111. For the reasons stated below, the defendants' motions for summary judgment will be granted, and Berry's motion to amend will be denied.

## BACKGROUND

Both Peters and the State Defendants submitted proposed findings of fact in support of their motions for summary judgment, as required by Civil Local Rule 56(b)(1)(C). ECF Nos. 90, 98.

Berry has submitted his own statement of proposed findings of fact (ECF No. 105), as well as a motion to amend those proposed findings (ECF No. 111), his own declaration (ECF No. 112), and additional supplemental material regarding the treatment he received in spring 2018 (ECF Nos. 115, 116). However, he has not responded directly to the proposed findings of fact filed be either Peters or the State Defendants, both of whom provided him with proper notice and warning regarding the consequences of failing to respond to their proposed findings, as required by the local rules. Civil L.R. 56(a)(1)(A) (E.D. Wis.). The court will thus treat the defendants' proposed findings of fact as undisputed. Civil L.R. (b)(4); *see also Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir. 1994) ("We have . . . repeatedly upheld the strict enforcement of [local] rules, sustaining the entry of summary judgment when the non-movant has failed to submit a factual statement in the form called for by the pertinent rule and thereby conceded the movant's version of the facts."). Additionally, Berry's motion to amend his proposed findings of fact will be denied, as he seeks to introduce evidence regarding his recent treatment, whereas his claims primarily focus on the defendants' treatment decisions during 2015 and 2016.

Berry has been housed at GBCI since November 18, 2015. State Defs.' Proposed Findings of Fact (DPFOF) ¶ 1, ECF No. 98. Defendant Dr. Mary Sauvey worked as an Advanced Care Provider (ACP)[1] at GBCI from prior to Berry's arrival until April 26, 2016. *Id.* ¶ 7. Defendant Dr. Lisa Allen was an ACP between June 2016 and January 2017. *Id.* ¶ 67. At all times relevant to this matter, Defendant Susan Peters was an advanced practice nurse prescriber (APNP) working at GBCI on a locus tenens assignment pursuant to a contract the Wisconsin Department of Corrections had

---

[1] The defendants use the term Advanced Care Provider to refer generally to doctors and advanced practice nurse prescribers. DPFOF ¶ 3 n.1.

2

with Maxim Physician Resources, LLC. Peters Proposed Findings of Fact (Peters PFOF) ¶ 4, ECF No. 90. Defendant Jean Lutsey has been the Health Services Manager at GBCI since 2015. DPFOF ¶ 15. GBCI also maintains a Special Needs Committee (SNC), which consists of Lutsey, a security liaison, and Defendants Mary Alsteen, Cassandra Baier, Kathy Lemens, and Hannah Utter. *Id.* ¶ 55. Defendant Scott Eckstein is the warden of GBCI. *See id.* ¶ 72. Finally, Defendant James LaBelle has worked as a Regional Nursing Coordinator for the Bureau of Health Services since 2012. *Id.* ¶ 37.

Berry's claims primarily focus on the defendants' decisions regarding certain medical restrictions that he has had put in place and removed at various times. At GBCI, medical restrictions are evaluated on a case-by-case basis, and any restrictions implemented for an inmate arriving from a different institution are not necessarily continued. *Id.* ¶ 54. When an inmate arrives from another institution, GBCI keeps his restrictions in place until an ACP can reevaluate him. *Id.* ¶ 56. GBCI does not issue indefinite restrictions, so any restrictions implemented for an inmate last no longer than a year and are subject to annual renewal. *Id.* Inmates often ask both their ACP and the SNC to consider implementing restrictions, and the SNC considers its own guidelines and any input from ACPs when making a decision regarding an inmate's restriction requests. *Id.* ¶ 57.

When Berry arrived at GBCI in November 2015, he had medical restrictions requiring that he receive a lower bunk, back brace, hot and cold treatments, an extra mattress and pillow, and supportive Velcro shoes. *Id.* ¶ 5. Berry's principal claim seems to be that the defendants violated his constitutional rights by failing to maintain the same medical restrictions when he was transferred to GBCI. Berry failed to mention these restrictions or request their continuation during an initial intake appointment with Dr. Sauvey on January 11, 2016, and several apparently lapsed on February

3

18, 2016. *Id.* ¶¶ 10–11, 13. At a subsequent appointment on March 7, 2016, Dr. Sauvey found no medical reason to continue restrictions for Velcro shoes and extra toilet paper, but she did continue his back brace restriction and a medication; she also ordered that he be reexamined in 6 months. *Id.* ¶ 14. Berry demanded permanent reinstatement of all previously ordered restrictions during a September 2, 2016 examination by Dr. Allen, who ordered extra pillow, low bunk, and gel insert restrictions and indicated that they should be reevaluated annually. *Id.* ¶¶ 67–68. APNP Peters began her assignment at Green Bay in September 2016, and first entered an order related to Berry's treatment in January 2017. Dr. Peters continued treating him throughout the year. Peters PFOF ¶¶ 24, 25, 39, 53, 66–69, 79, 82, 106.

Berry also believed that Lutsey, Alsteen, Baier, Utter, and Lemens—in their capacities as members of the SNC—should have overriden his ACPs' decisions and implemented the restrictions he sought. DPFOF ¶ 70. After Berry's transfer to GBCI, Alsteen, Baier, Utter, and Lemens reviewed numerous Health Service Request (HSR) forms filed by him, and they examined him on several occasions. *Id.* ¶¶ 59–66. Between November 2015 and January 2018, Berry's patient request file at GBCI accumulated 499 pages, and his medical records accumulated 350 pages. *Id.* ¶¶ 77–78. Berry also filed written communications and complaints reviewed on different occasions by Warden Eckstein and LaBelle. *Id.* ¶¶ 40–43, 72–73. Additional factual information will be set forth as necessary in the analysis that follows.

## LEGAL STANDARD

Summary judgment is appropriate when the moving party shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). All reasonable inferences are construed in favor of the nonmoving party.

4

*Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (quoted source and internal quotation marks omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* Summary judgment is properly entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012) (internal quotation mark omitted) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

## ANALYSIS

A plaintiff may prevail on a claim for relief under 42 U.S.C. § 1983 by showing that he was (1) deprived of a federal right (2) by a person acting under color of state law. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Chatham v. Davis*, 839 F.3d 679, 684 (2016) (alterations in original) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). "A prison official may be liable for deliberate indifference only if he 'knows of and disregards an excessive risk to inmate health or safety.'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). To succeed on a deliberate indifference claim, a prisoner must prove that he "suffered from '(1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent.'" *Id.* (quoting *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008)). Considering the record in the light most favorable to Berry, he cannot satisfy either prong of the deliberate indifference standard.

5

### A. Berry Cannot Show That He Suffers From An Objectively Serious Medical Condition.

An essential element of a claim for deliberate indifference to a serous medical condition is the existence of a serious medical condition. "A medical condition is deemed to be objectively serious if it is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Williams v. Rodriguez*, 509 F.3d 392, 401 (7th Cir. 2007) (quoting *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999)). Yet Berry's medical records indicate that he consistently ambulates easily and does not appear to be in pain. DPFOF ¶ 44 (citing ECF No. 97-1 at 8, 10–11, 16, 27, 30, 33, 35, 39, 45–46, 49, 51, 54, 56–57, 62, 67, 69, 85, 134). In fact, a video dated July 12, 2017, depicting Berry effortlessly running down two flights of stairs at GBCI, approaching a supervisor, and then walking through several of the institution's corridors with his hands cuffed behind his back has been submitted by the defendants. ECF No. 51-1. In the video, there is no indication that Berry is in pain or otherwise limited in his ability to ambulate. *Id.*; DPFOF ¶¶ 45–46. The court has previously noted that "at the very time [this video was recorded,] Berry had pending before the court no less than five separate motions for preliminary injunctions based on complaints that his severe back impairments prevented him from leaving his cell even for meals, walking up any stairs, and requiring intense treatment by a pain specialist." ECF No. 87 at 3. Given this irrefutable evidence, no jury could conclude that the defendants' conclusion that Berry's claim of chronic pain was exaggerated was unreasonable. Even if this evidence does not by itself preclude Berry from going forward on his claim, the defendants have submitted other evidence as well.

In November 2017, Dr. Robert Bilkovski conducted a special examination of Berry and reviewed his medical records. ECF No. 97-1 at 16. Although Dr. Bilkovski determined that Berry's

6

medical records supported a diagnosis of mild scoliosis and degenerative changes at the disc spaces in the thoracic lumbar region, he also concluded that Berry's complaints of pain vastly overstated the severity of his condition, that his pain could be managed with conservative pain management, and that his requested accommodations (feed in cell, back brace, and referral to specialists) were not clinically warranted. *Id.* Indeed, all of the doctors who have examined Berry, including Dr. Sauvey, Dr. Allen, Dr. Joseph, as well as Dr. Bilkovski, agree: Berry's medical condition is not serious. Thus, medical opinion evidence in the record undermines Berry's argument that various individuals' failure to give him the restrictions he seeks reflects deliberate indifference. Berry has no medical evidence to counter Dr. Bilkovski's opinion, and his own opinion as to what is a serious medical condition is inadmissible.

In his brief in opposition to the motions for summary judgment, Berry argues that the defendants only assume that the video shows him running, noting that "[t]he video doesn't show the full body of Plaintiff coming downstairs until he's at the bottom of [the] stairs walking up to the supervisor." ECF No. 106 at 6 (emphasis omitted). He goes on to elaborate that "[t]he Plaintiff is of the position that[] he was holding both sides of the railings and sliding down with the gravity without his feet ever touching the steps until he reached the bottom." *Id.* at 23. But the video itself belies Berry's characterization. Although Berry does seem to jump over the last couple of steps at the bottom of each flight of stairs, he also lifts his hands from the railing in the middle of each flight, indicating that he did actually plant his feet. In any event, only his feet are obscured on the first flight of stairs, and his entire body is visible on the second flight, his feet clearly landing on the ground. Considering this video evidence demonstrating Berry's ability to walk and run, as well as the objective medical evidence in the record indicating that he did not need restrictions, I conclude that no reasonable jury could conclude that Berry suffered from an objectively serious medical need.

### B. Berry Cannot Show Deliberate Indifference.

Even assuming Berry's back condition (the mild scoliosis and degenerative disc described by Dr. Bilkovski) and resultant pain does reflect a serious medical condition, the undisputed facts show that no defendant acted with indifference toward it. An inmate alleging deliberate indifference must "show that the defendants actually knew of a substantial risk of harm to the inmate and acted or failed to act in disregard of that risk." *Walker v. Benjamin*, 293 F.3d 1030, 1037 (7th Cir. 2002). The Seventh Circuit has elaborated on the nature of this high standard:

> Deliberate indifference requires a showing of "more than mere or gross negligence, but less than the purposeful or knowing infliction of harm." We have characterized the required showing as "something approaching a total unconcern for [the prisoner's] welfare in the face of serious risks." To establish deliberate indifference, a plaintiff must present evidence that an individual defendant intentionally disregarded the known risk to inmate health or safety. A defendant with knowledge of a risk need not "take perfect action or even reasonable action[,] . . . his action must be reckless before § 1983 liability can be found."

*Collins v. Seeman*, 462 F.3d 757, 762 (7th Cir. 2006) (citations omitted; alterations in original) (first quoting *Matox ex rel. Matos v. O'Sullivan*, 335 F.3d 553, 557 (7th Cir. 2003); then quoting *Duane v. Lane*, 959 F.2d 673, 677 (7th Cir.1992); and then quoting *Cavalieri v. Shepard*, 321 F.3d 616, 622 (7th Cir. 2003)).

Considering first Dr. Sauvey, Berry alleges that she was deliberately indifferent for removing his existing medical restrictions when he arrived at GBCI and for refusing to see him. Dr. Sauvey saw Berry initially in January 2016 and again in March 2016, after many of his restrictions had expired the previous month. DPFOF ¶¶ 13–14. At the March 2016 appointment, she determined that there was no medical need for some restrictions but that Berry's condition did warrant others, particularly the continuation of the back brace. *Id.* ¶ 14. Berry strenuously objects to Dr. Sauvey's

8

decisions regarding these restrictions, "[b]ut 'mere disagreement with a doctor's medical judgment' is not enough to support an Eighth Amendment violation." *Cesal v. Moats*, 851 F.3d 714, 722 (7th Cir. 2017) (quoting *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010)). Berry also claims that Dr. Sauvey refused to see him because she did not respond to his HSR forms. But as an ACP, Dr. Sauvey did not schedule her own appointments and did not even learn which inmates she was seeing until she arrived at GBCI each day. DPFOF ¶¶ 9, 19. As a result, any delay in her appointments with Berry was beyond her control and therefore does not reflect a refusal to see him. Because Berry simply disagrees with Dr. Sauvey's medical determinations and has presented no evidence that she refused to see him, his deliberate indifference claims against her fail.

Turning to Dr. Allen, she examined Berry on September 2, 2016, and discussed his restrictions at that time. *Id.* ¶ 67. Berry demanded indefinite reinstatement of all restrictions previously ordered for him, and Dr. Allen agreed that extra pillow, low bunk, and gel insert restrictions were appropriate, subject to annual reevaluation. *Id.* ¶ 68 (citing ECF No. 97-1 at 79). Dr. Allen's extensive notes from the appointment record Berry's specific requests and pair them with annotations regarding her medical decisions based on the examination. *Id.* ¶ 69. The notes also include observations that Berry walked with a steady and even gait, appeared muscular and fit, and had no gross neurologic abnormalities. ECF No. 97-1 at 78. Dr. Allen's careful notes recording Berry's demands and then making annotations regarding her decisions—including her decisions to reinstatement several of his requested restrictions—show that, far from disregarding his complaints of pain, she took his requests seriously and exercised medical judgment with regard to each. Because Dr. Allen's decision to reinstate some restrictions while declining Berry's request for others reflects an exercise of her medical judgment, Berry's disagreement with that decision does not render

9

her liable to him for deliberate indifference to his pain. *See Cesal*, 851 F.3d at 722. Consequently, Berry's deliberate indifference claims against her will also be dismissed.

Berry's claims against Peters likewise fail because her actions reflect an exercise of her medical judgment and show regard for his claims of pain. In April 2017, she referred him to Advanced Pain Management (APM), which resulted in a July off-site appointment at which a non-defendant doctor recommended, among other things, that Berry receive two cervical epidural steroid injections. Peters PFOF ¶¶ 40, 56.[2] Peters also recommended in September 2017 that the SNC review its decision to discontinue several of his restrictions, and she recommended that his back brace and Velcro shoe restrictions continue into February 2018. Peters PFOF ¶ 71; ECF No. 91-2 at 83. In addition to personally examining Berry on multiple occasions, other actions Peters took on his behalf throughout 2017 included ordering an MRI prior to his APM referral, ordering an evaluation of the MRI for possible surgical intervention, requesting non-formulary drugs, asking the Medical Committee to review the SNC's decisions regarding his requested restrictions, and ordering a sleep study (which Berry refused). Peters PFOF ¶¶ 39–40, 53, 64, 66–69, 74, 79–80, 92. The undisputed facts therefore show that Peters recognized and acknowledged Berry's claims of pain, referred him for several treatments, and recommended reinstatement of some of the restrictions he seeks. Accordingly, her actions do not reflect indifference to his serious medical needs, and his claims against her will be dismissed.

---

[2] By late September 2017, Berry was scheduled to receive the recommended injections at APM, but shortly before the appointment APM stopped seeing patients from GBCI, resulting in a last minute cancellation requiring that new arrangements be made. Peters PFOF ¶¶ 79, 81, 83, 90–91, 93, 95.

Next, Berry alleges that Jean Lutsey, in her capacity as HSU manager and member of the SNC, had the authority to override his ACPs' medical restriction recommendations or refer him to a doctor who would reinstatement them, and he contends that she was therefore deliberately indifferent to him because she failed to do so. However, Berry misunderstands the nature of Lutsey's role at GBCI. Although Lutsey does supervise the provision of health care services, including monitoring nursing documentation in medical records, and serve as liaison to other institution units and community health care providers, she does not provide medical treatment to inmates. DPFOF ¶¶ 16–17. She meets with inmates to discuss their medical care only occasionally. *Id.* ¶ 17. As a result, she did not even meet Berry until 2017, and there is no dispute that she never provided him with any medical care or treatment. *Id.* ¶ 18. The court has already determined that Berry has offered no evidence that the decision of Dr. Sauvey and Dr. Allen to discontinue several restrictions was anything other than a reasonable exercise of medical judgment, and Lutsey therefore cannot be liable for deliberate indifference, either, since she had no involvement in those medical decisions. *See Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996) ("Snipes' deliberate indifference claim against Dr. Ehrhardt, and thus against Warden DeTella, who had no involvement in the treatment, is without merit."). Berry's claims against Lutsey will therefore be dismissed.

Similar to Lutsey, Berry contends that Alsteen, Baier, Utter, and Lemens were deliberately indifferent to his need for medical restrictions in early 2016 after his arrival at GBCI because he submitted numerous HSR forms asking to see a doctor but did not see one soon enough to satisfy him. ECF No. 94-1 at 7–8. The record establishes that Alsteen, Baier, Utter, and Lemens each examined Berry on multiple occasions throughout 2016 and 2017 and promptly replied to the numerous HSR forms he filed. DPFOF ¶¶ 58–66 (citing treatment notes and HSR forms with

11

responses). These copious documents show that Alsteen, Baier, Utter, and Lemens all responded to his persistent complaints of pain, and it has already been established that Berry ultimately saw Dr. Sauvey and Dr. Allen to discuss his restrictions. Even if Berry does not agree with the treatment these nurses provided him, the record includes no evidence that they acted with the reckless disregard toward his complaints of pain, an essential element needed to support a deliberate indifference claim. Berry's claims against Alsteen, Baier, Utter, and Lemens will therefore also be dismissed.

Finally, the undisputed facts show that no reasonable jury could conclude that LaBelle, in his capacity as a Regional Nursing Coordinator, and Scott Eckstein, as Warden of GBCI, were deliberately indifferent to Berry's serious medical needs. LaBelle is not a medical care provider at any prison, and his primary responsibility as a Regional Nursing Coordinator is to serve as the reviewing authority for inmate complaints related to healthcare. DPFOF ¶¶ 38–39. He did, however, review several of Berry's complaints, affirming multiple decisions by inmate complaint examiners who determined that, based on the medical records, Berry was receiving ongoing medical care that did not require additional intervention. *Id.* ¶¶ 41–42 (citing ECF Nos. 96-1, 96-2, 96-9, 96-12, 96-18, 96-23, 96-25). Because LaBelle served as the reviewing authority for inmate complaints regarding medical care, Warden Eckstein did not serve as the reviewing authority for those complaints and instead left those decisions to medical professionals. *Id.* ¶ 43.

"A plaintiff bringing a civil rights action must prove that the defendant personally participated in or caused the unconstitutional actions." *Alejo v. Heller*, 328 F.3d 930, 936 (7th Cir. 2003) (citing *Duncan v. Duckworth*, 644 F.2d 653, 655 (7th Cir. 1981)). Particularly relevant here, "[r]uling against a prisoner on an administrative complaint does not cause or contribute to the violation."

12

*George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007). Although it is possible for a complaint examiner to engage in conduct that would give rise to a deliberate indifference claim, the Seventh Circuit has suggested that such liability would arise only in the most extreme circumstances, such as if "a complaint examiner routinely sent each grievance to the shredder without reading it" or "intervened to prevent the medical unit from delivering needed care." *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009). Even where medical staff provides "woefully inadequate" treatment, a complaint examiner's "failure to realize the potential gravity of the situation does not amount to deliberate indifference." *Greeno v. Daley*, 414 F.3d 645, 657 (7th Cir. 2005).

Here, there is no indication that LaBelle failed to do his job as a complaint examiner. Not only has the court already determined that the underlying medical decisions did not reflect deliberate indifference, but the record is clear that LaBelle reviewed the medical records regarding Berry's complaints and made reasoned decisions based on the available evidence. Fundamentally, Berry disagrees with LaBelle's decisions affirming dismissal of Berry's complaints, but that it not a basis for find that LaBelle was deliberately indifferent in his capacity as a complaint examiner. Likewise, there is no dispute that, because LaBelle reviewed the medical complaints, Warden Eckstein did not review them. Eckstein's reasonable decision not to intervene with regard to medical decisions therefore does not reflect deliberate indifference, either. Berry's claims against LaBelle and Eckstein will therefore be dismissed.

## CONCLUSION

For the foregoing reasons, the defendants' motions for summary judgment (ECF Nos. 88, 95) are **GRANTED**. Additionally, Berry's motion to amend his proposed findings of fact (ECF

No. 111) is **DENIED**.  This action is **DISMISSED**, and the Clerk is directed to enter Judgment for the defendants.

    **SO ORDERED** this 18th day of July, 2018.

                                    s/ William C. Griesbach
                                    William C. Griesbach, Chief Judge
                                    United States District Court